550 So.2d 1237 (1989)
Sidney A. ROVIRA, Jr.
v.
Janet Mary Mire, Wife of Sidney A. ROVIRA, Jr.
No. 89-CA-0226.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1989.
Writ Denied December 1, 1989.
*1238 James Derbes, Derbes & Waldrup, New Orleans, for plaintiff-appellant.
Pat M. Franz, Metairie, for defendant-appellee.
Before SCHOTT, C.J., and WILLIAMS and PLOTKIN, JJ.
SCHOTT, Chief Judge.
This is an appeal by the husband from a judgment which found him to be at fault and the wife to be without fault, awarded the custody of three minor children to the wife, and awarded her child support totaling $1,250 per month and permanent alimony of $650 per month. Appellant claims the child support and alimony awards are excessive and argues for changes in the judgment because of federal income tax considerations.
The parties were married in 1965 and had seven children. They separated in September, 1982 and the husband filed suit for divorce in April, 1988. At the time of the trial in October, 1988 three of the children were minors, eight, eleven, and fifteen years of age respectively. In 1987 the husband earned $46,231 and expected about the same in 1988. The wife has never been employed.
Appellant's first argument is that the award is unfair to him because after payment of income taxes, alimony, and support, he is left with less spendable money than his former wife or each child. This problem is not novel and was undoubtedly considered by the trial judge in the exercise of her discretion. This fact standing alone does not mandate a reduction in the awards. Similarly, guidelines of the Department of Health and Human Resources for amounts of child support do not control the trial court. If properly presented to the trial judge, they may be considered along with other relevant facts in the exercise of her discretion. Finally, appellant makes much over the fact that two adult children live with the wife, one with a two year old child, and that they pay their mother monthly room and board of $150 and $160 respectively. This too was undoubtedly considered by the trial court in making the awards. We are not persuaded by these arguments that the trial judge abused her discretion considering all the circumstances such as the fact that appellant lives with his mother so that his expenses for board and lodging are relatively low and the fact that he is the recipient of some assistance from his other relatives.
The most difficult issues raised by appellant stem from the income tax consequences of the judgment. The family home owned by the community is occupied by the wife and children. Under the judgment she is required to make the mortgage payments of $581.00. Under the income tax laws, the interest on these payments is deductible from her income if she itemizes deductions. The income tax laws also provide that the spouse who has custody of the children has the right to claim the children as exemptions. Appellant contends that these tax benefits which are available to the wife are being wasted because she has little income whereas the benefits would be of value to him.
Appellant's solution with respect to the mortgage payments is to reduce the wife's alimony by $581 leaving her with $69 and to oblige him to make the payments. However, the practical effect of this would be to increase appellant's taxable income by $581 and enable him to deduct from his income only the small portions of the payments applied to the interest on the loan. Consequently, appellant would incur a greater tax liability than he has now.
Appellant's argument concerning the tax exemptions for the minor children has merit. Since appellee has no income other than the $7800 annual alimony she is receiving, she has no use for the $5,850 in exemptions for her children. On the other hand the allocation of the exemptions to appellant would probably result in a saving of $1,638. Although the custodial parent has the right to claim the exemptions the Internal Revenue Code permits the custodial parent to execute a waiver of tax exemptions which enables the non-custodial parent to claim them. In Cross v. Cross, 363 S.E.2d 449 (W.Va.1987) the court concluded *1239 that a state court had the power to award the dependency tax exemption by ordering the custodial parent to execute the waiver required by the Internal Revenue Code. We agree with the reasoning employed and conclusion reached by the West Virginia court. An opposite conclusion would result in a waste of money for the entire family unit. Therefore, we have resolved to remand the case to the trial court for the purpose of accomplishing this transfer of the tax exemptions. We have noted that the loss of the exemptions by the appellee may result in some small additional tax liability for her. If so the trial court may wish to adjust the awards so as to maintain the same level of after-tax income she is presently enjoying.
Appellant's final argument is that appellee should be required to take a job and contribute to her own support. Appellee has a high school education and took an accounting course at a business college. She has never worked and has not attempted to find employment since the separation. In determining the entitlement and the amount of alimony, the trial court should consider the time necessary for the recipient to acquire appropriate education, training or employment and should consider her earning capacity in light of other circumstances. C.C. art. 160. It does not appear that the trial judge made these considerations in making the award.
In deciding how to correct this error we recognize that appellee will probably experience some difficulty in finding employment considering her lack of education and experience and her family situation in having to look after the three minor children. On the other hand, the grant of alimony on a indefinite basis without requiring appellee to look for employment or even seek education or training to make herself employable seems inconsistent with art. 160. Consequently, we have resolved to terminate appellant's obligation to pay alimony to appellee one year after our judgment becomes final. This is subject to appellee's right to return to the district court and seek an extension of the permanent alimony upon proof of entitlement based upon all of the considerations set forth in art. 160 including those involving her obligation to seek further education and training and her efforts to seek suitable employment.
Accordingly, the case is remanded to the trial court for the sole purpose of enabling the trial court to order appellee to sign the form required by the Internal Revenue Service to waive the tax exemptions for her children thereby enabling appellant to claim these exemptions. On remand the trial court may adjust appellee's income from alimony to compensate her for any loss of income with results from her loss of the exemptions. The judgment appealed from is otherwise affirmed but is amended to terminate appellant's obligation to pay alimony to appellee one year after our judgment becomes final, reserving appellee's right to seek continued alimony upon proof of entitlement in accordance with law and the views expressed herein. All costs including costs of this appeal are assessed against appellant.
AMENDED AND REMANDED.
PLOTKIN, J., dissents in part and concurs in part, with reasons.
PLOTKIN, Judge, dissenting in part and concurring in part.
In my opinion, Louisiana courts have the authority in domestic cases to consider the tax consequences to the parties and order the custodial parent to execute consent forms assigning income tax dependency exemptions to the non-custodial parent and all other tax benefits which benefit the family. Therefore, a detailed factual and legal analysis is necessary.
FACTS
The parties do not contest the divorce, custody or visitation rights rendered November 22, 1988. The only issues are the allocation of tax deductions, whether the wife and child support award is excessive and the wife's right to permanent alimony.
The parties were married in 1965 and had seven children. At the time of trial, eight people were living in the family home, Mrs. Rovira, six children and one grandchild. *1240 They are, Christine Rovira, age 23, a full time employee for Louisiana Land and Exploration Co., earning $22,000 per year who pays her mother $150 a month for food and lodging; Lisa Rovira, age 22, a full time cashier at Delchamps, who pays her mother $160 per month for room and board for herself and her two year old son; Sidney Rovira, a full time student, who works three evenings a week at Pizza Hut and contributes nothing towards his lodging and food; and three minor children, Melissa, age 15, Steven, age 11 and Scott, age 5. Julie Rovira, age 18, was evicted by Mrs. Rovira, after a dispute, and resides with Mr. Rovira's girlfriend.
Mrs. Rovira is 42 years of age, in good health, possesses a high school education and a certificate in accounting from a business school. She has never worked, claiming that she must devote all of her time to nurturing her children and grandchild. Her total income is $310 per month from Christine and Lisa, plus the alimony and child support.
Mr. Rovira's gross earnings from all sources for 1987 and 1988 total $46,231 per year.
The trial court awarded Mrs. Rovira, $1250 per month child support, plus payment of all private school tuition, registration fees, books and uniforms and maintenance of medical and hospitalization for the minor children and allowed her to claim the three minor children as income tax exemptions, notwithstanding the non-custodial spouse's claim for these exemptions. The wife was awarded $650 per month alimony, granted exclusive use of the family home and ordered to pay the housenote, insurance and taxes on the home.
Appellant claims that after paying alimony, child support and taxes that he has less money than his wife and each of his children, and is unable to support himself. Because his ex-wife's sole income is currently $7,800 alimony and taxable, 26 U.S.C. 61(a)(8) and the child support income is non-taxable, nor deductible to Mr. Rovira, 26 U.S.C. 71(c)(1), he would receive a substantial tax savings if he were able to claim the children as dependents.
DEPENDENT CHILD INCOME TAX EXEMPTIONS
The issue is res nova in Louisiana but has been addressed in other jurisdictions.
One purpose of our legal system is to induce parties to act in ways that they would not choose but for the pressure of legal incentives or disincentives. Law and economics is one recognized method to modify legal doctrines and policies to accomplish this goal. The use of economics in legal analysis has been universally accepted, including in Louisiana, to formulate legal rules. J. Weingarten, Inc. v. Northgate Mall Inc., 404 So.2d 896 (La.1981). This case provides a classic law and economics opportunity to justify a policy change in domestic cases.
The issue that must be closely scrutinized is whether, in a domestic case, a state court can award the dependent child exemption to the noncustodial parent in a divorce proceeding. A review of recent decisions in other states reveals a clear trend that relies on the principle of state authority in this matter. They have held that state courts have the authority to order the custodial parent to execute consent forms assigning the federal income tax dependency exemption to the noncustodial parent. Fleck v. Fleck, 427 N.W.2d 355 (N.D.1988); Hughes v. Hughes, 518 N.E.2d 1213 (Ohio 1988); Pergolski v. Pergolski, 143 Wis.2d 166, 420 N.W.2d 414 (Ct.App.1988); Lincoln v. Lincoln, 155 Ariz. 272, 746 P.2d 13 (Ct.App.1987); Cross v. Cross, 363 S.E.2d 449 (W.Va.1987); Fudenberg v. Molstad, 390 N.W.2d 19 (Minn. Ct.App.1986).
The conflict arises if the income tax laws somehow limits state action in a divorce proceeding on awarding the dependency exemption. Section 152(e), Title 26, U.S.Code, as amended by the Tax Reform Act of 1984 (P.L.98-369), must, therefore, be examined to determine if the tax code in any way precludes states from making that award.
Section 152(e), applicable to tax years beginning after December 31, 1984 provides in pertinent part:

*1241 "(e) Support test in case of child of divorced parents, etc
"(1) Custodial parent gets exemption. Except as otherwise provided in this subsection, if
"(A) a child [as defined in Section 151(e)(3)] receives over half of his support during the calendar year from his parents
"(i) who are divorced or legally separated under a decree of divorce or separate maintenance, and
"(B) such child is in the custody of one or both of his parents for more than one half of the calendar year, such child shall be treated, for purposes of subsection (a) as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").
"(2) Exception where custodial parent releases claim to exemption for the year. A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if
"(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and
"(B) the noncustodial parent attaches such written declaration to the noncustodial parent's tax return for the taxable year beginning during such calendar year.
"For purposes of this subsection, the term `noncustodial parent' means the parent who is not the custodial parent." (Emphasis added.)
Thus, the dependency exemption is provided for the custodial parent of a child of divorced or separated parents. The income tax dependency exemption is allocated to the custodial parent unless that parent expressly waives in writing his or her claim to the exemptions for the particular tax year in question.
This change in the law was clearly made for the administrative convenience of the Internal Revenue Service. The Staff of the Joint Congressional Committee on Taxation, 98th Congress, 2d Session, on December 31, 1984 explains the reasons for the amendment:
The prior rules governing the allocations of the dependency exemption were often subjective and presented difficult problems of proof and substantiation. The Internal Revenue Service became involved in many disputes between parents who both claimed the dependency exemption based on providing support over the applicable thresholds. The cost to the parties and the Government to resolve these disputes was relatively high and the Government generally had little tax revenue at stake in the outcome. The Congress wished to provide more certainty by allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption. "Thus, dependency disputes between parents will be resolved without the involvement of the Internal Revenue Service." (Emphasis added.)
As the Ohio court found in Hughes, supra, 518 N.E.2d at 1216, it is clear that the only concern of the IRS, evident from the history surrounding the changes, is that only one divorced spouse claim and receive the deduction. The legislative history of the tax code amendments does not support any attempt to encroach on state court powers in divorce matters. Moreover, there is evidence that the power of the state court to award the dependency exemption has been acknowledged by the Treasury Department. In committee hearings, the Department spokesperson reported:
The bill proposes a rule which is both simple and fair. While the new rule will not eliminate all controversies in this area, most disputes will be easily resolved by reference to the divorce or separation agreement. Treasury Statement on H.R. 3475 (later H.R. 4170), *1242 Ronald Pearlman, Dep. Asst. Secy., Tax Policy, Before the House Ways and Means Committee (July 25, 1983).

In Fudenberg v. Molstad, supra, 390 N.W.2d at 21, the Minnesota court concluded that the state court's allocation of the exemption does not interfere with Congressional intent. Since such allocations do not involve the IRS in fact-finding determinations and the involvement of the state court does not have any impact on the IRS, the appeals court found that the allocation of the exemption was permissible.
This posture, supported by the legislative history of the amendments to the tax code and adopted by almost all states[1] that have examined the issue, should be adopted as policy by this court. In addition to being non-excluded procedure, allocation of the dependency exemptions can create a more equitable solution when courts consider this award in a divorce proceeding. Moreover, while the court does not serve as tax accountants for the parties in a divorce, consideration of unused tax exemptions clearly comes under the court's authority to fashion a remedy that is fair and impartial.
Having established the premise that state courts have the authority to allocate the award of dependency exemptions, the possible effects of the allocation must be considered in fashioning a remedy. First, the effect of awarding the exemption to the non-custodial parent is to increase the available income to which support guidelines may be applied. This factor should be taken into consideration by the trial court in its determination of a fair child support judgment.
The facts in the instant case suggest that the non-allocation of the dependency exemptions results in a net tax loss to the "family unit" that neither side benefits from. The reallocation of the exemptions to Mr. Rovira, as long as Mrs. Rovira suffers no loss, would provide that the tax exemption is afforded full utility. As the majority suggests, the trial court may adjust the support award to protect Mrs. Rovira from any tax liability as a result of the tax allocation.
MORTGAGE INTEREST DEDUCTION
I concur with the majority that, in this case, the reallocation of the mortgage payments to Mr. Rovira would not benefit his tax status. However, in concordance with the principles I expressed earlier herein, I would adopt the rule that all tax consequences to both spouses should be considered in determining alimony and child support, including all interest deductions.
ALIMONY AND CHILD SUPPORT
I concur that Mrs. Rovira's alimony should terminate within one year, unless she proves to the trial court why she was unable to return to work. One year is a liberal time period for her to locate employment, considering her training, education, market conditions and obligations to her family.
However, I dissent on the issue of child support. Mrs. Rovira is supporting eight people in her home. Her household expenses for each of the six children and one grandchild are patently inconsistent. She accepts $150.00 a month for room and board from one adult child that lives with her. Another adult child pays Mrs. Rovira $160.00 room and board for her and her child. Yet, she is receiving from Mr. Rovira approximately $416.00 per month for each minor child. In addition, the minor children's medical insurance and school expenses are paid for by Mr. Rovira.
These figures suggest a disparity in terms of household costs. The $310.00 that she collects from her two adult children is disproportionate to the support costs she claims for the three minor children. Therefore, on this issue I would remand the case for a re-evaluation of the child support award with these contradictions considered.
CONCLUSION
In conclusion, I would reverse and remand to the trial court to order Mrs. Rovira to sign the Internal Revenue Service *1243 form waiving the tax exemptions for her children, thereby enabling Mr. Rovira to claim these tax exemptions. I would reduce the child support to $850.00 per month, plus the fringe benefits ordered by the trial court. In all other respects, I concur in the majority opinion.
NOTES
[1] This writer's survey revealed only two cases where the state courts did not follow the indicated trend. (1) Davis v. Fair, 707 S.W.2d 711 (Tex.App.1986); (2) Lorenz v. Lorenz, 166 Mich. App. 58, 419 N.W.2d 770 (1986).